**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| REPUBLIC PROPERTY TRUST, *et al.*, | |
| Plaintiffs, | |
| v. | Civil Action No. 1:07-cv-00595-RCL |
| | Judge Lamberth |
| REPUBLIC PROPERTIES CORPORATION, *et al.*, | |
| Defendants. | |

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO STEVEN A. GRIGG'S
MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT**

TABLE OF CONTENTS

ARGUMENT ...................................................................................................2

I.   RPT AND RPLP HAVE SUFFICIENTLY PLED A CLAIM FOR
     SECURITIES FRAUD UNDER SECTION 10(b) and RULE 10b-5 ...............2

     A.  Principles of Law ...............................................................................2

          1.   RPT and RPLP have Pled Fraud with Sufficient
               Particularity ...........................................................................3

          2.   RPT and RPLP Have Sufficiently Pled A Fraudulent
               Omission ..................................................................................6

     B.  RPT and RPLP have Pled Scienter with Sufficient Particularity ............10

          1.   Applicable Standard ..................................................................10

          2.   RPT and RPLP Have Pled Motive and Opportunity ...............11

          3.   RPT and RPLP Have Pled Conscious or Reckless
               Behavior ..................................................................................13

          4.   RPT and RPLP's Claims are Not Based on Fraud by
               Hindsight ..................................................................................15

     C.  RPT and RPLP Have Pled Loss Causation .................................................16

     D.  The Development Contribution Agreement Involved the Sale of
         Securites ...............................................................................................18

          1.   The Limited Partnership Units are Securities Under
               Federal Law ..............................................................................18

          2.   The Limited Partnership Units are Securities Under
               District of Columbia Law ..........................................................21

          3.   The Development Contribution Agreement Involved a
               Sale and Purchase of Securities .................................................22

II.  RPT AND RPLP HAVE SUFFICIENTLY PLED COMMON LAW
     FRAUD.............................................................................................................23

III. RPT AND RPLP HAVE SUFFICIENTLY PLED SECTION 20(a)
     CONTROL PERSON LIABILITY AGAINST GRIGG ...............................24

IV.    RPT AND RPLP HAVE SUFFICIENTLY PLED A CLAIM FOR
  SECURITIES FRAUD UNDER THE DISTRICT OF COLUMBIA
  CODE ................................................................................................24

V.    RPT AND RPLP HAVE SUFFICIENTLY PLED A CLAIM FOR
  UNJUST ENRICHMENT ..................................................................26

VI.    RPT AND RPLP HAVE ADEQUATELY PLED ENTITLEMENT
  TO PUNITIVE DAMAGES ...............................................................27

CONCLUSION ...........................................................................................................28

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Acito v. IMCERA Group*, 47 F.3d 47 (2d Cir. 1995) ....................................................15

*Affiliated Ute Citizens v. United States*, 406 U.S. 128 (1972) ..........................................6

*Air Line Pilots Association, International v. Delta Air Lines, Inc.*, 863 F.2d 87 (D.C. Cir. 1988) ........................................................................................................................20

*In re Baan Co. Sec. Litigation*, 103 F. Supp. 2d 1 (D.D.C. 2000) ....................................2

*Ballan v. Wilfred American Educational Corp.*, 720 F. Supp. 241 (E.D.N.Y. 1989)....................10

*Bielski v. Cabletron System (in Re Cabletron System*, 311 F.3d 11 (1st Cir. 2002) .......................7

*Bloomgarden v. Coyer*, 479 F.2d 201 (D.C. Cir. 1973)................................................27

*Burman v. Phoenix Worldwide Industrial*, 384 F. Supp. 2d 316 (D.D.C. 2005)...........................11

*Burman v. Phoenix Worldwide Industrial*, 2006 U.S. Dist. LEXIS 46071 (D.D.C. July 7, 2006) ................................................................................................................2, 11, 23

*Chiarella v. United States*, 445 U.S. 222 (1980) .......................................................4, 9

*In re Complete Management Inc. Sec. Litigation*, 153 F. Supp. 2d 314 (S.D.N.Y. 2001) ............12

*Compudyne Corp. v. Shane*, 453 F. Supp. 2d 807 (S.D.N.Y. 2006)................................................11

*Dura Pharm., Inc. v. Broudo*, 544 U.S. 336 (2005)................................................16, 17

*In re Dynex Capital Inc. Sec. Litig.*, 2006 WL 314524 (S.D.N.Y. Feb. 10, 2006) .......................13

*Eacho v. N D Resources, Inc.*, 1985 U.S. Dist. LEXIS 19558 (D.D.C. May 23, 1985).................6

*In re Fannie Mae Securities*, 2007 U.S. Dist. LEXIS 33939 (D.D.C. May 8, 2007) ....................11

*Felder v. Johanns*, 2007 U.S. Dist. LEXIS 38001 (D.D.C. May 25, 2007) ................................20

*Frazier v. Manson*, 651 F.2d 1078 (5th Cir. 1981)......................................................18

*Goodman v. Epstein*, 582 F.2d 388 (7th Cir. 1978)....................................................18

*Hammerman v. Peacock*, 607 F. Supp. 911 (D.D.C. 1985)...........................................9

*Hirsch v. Dupont*, 553 F.2d 750 (2nd Cir. 1977) ......................................................9

*Howard v. Everex System*, 228 F.3d 1057 (9th Cir. 2000) ...........................................4

*In re: Independent Energy Holdings PLC Sec. Litigation*, 154 F. Supp. 2d 741 (S.D.N.Y 2001) ...................................................................................................... 15-16

*Kolstad v. ADA*, 139 F.3d 958 (D.C. Cir. 1998) ..................................................27

*In re Lernout & Hauspie Sec. Litigation*, 230 F. Supp. 2d 152 (D. Mass. 2002) ...........................5

*Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940 (9th Cir. 2004) ......................12

*Mayer v. Oil Field Systems Corp.*, 721 F.2d 59 (2d Cir. 1983) ......................................18

*Newby v. Lay (In re Enron Corp. Sec., Derivative & ERISA Litigation)*, 258 F. Supp. 2d 576 (S.D. Tex. 2003) ........................................................................................5

*Novak v. Kasaks*, 216 F.3d 300 (2d Cir. 2000) ....................................................11, 13

*In re Par Pharmaceutical, Inc., Sec. Litigation*, 733 F. Supp. 668 (S.D.N.Y. 1990) ..........7, 10, 15

*Powers v. British Vita, P.L.C.*, 57 F.3d 176 (2d Cir. 1995) ...........................................4

*Randall v. Loftsgaarden*, 478 U.S. 647 (1986) ...................................................18

*Rathborne v. Rathborne*, 683 F.2d 914 (5th Cir. 1982) ...............................................22

*Rodeo v. Gillman*, 787 F.2d 1175 (7th Cir. 1986) ..................................................18

*Royal American Managers, Inc. v. IRC Holding Corp.*, 885 F.2d 1011 (2d Cir. 1989) ........... 9-10

*SEC v. Huttoe*, 1998 U.S. Dist. LEXIS 23211 (D.D.C. Sept. 14, 1998) ......................................13

*SEC v. Kenton Capital, Ltd.*, 69 F. Supp. 2d 1 (D.D.C. 1998) ......................................13

*SEC v. Parkersburg Wireless Ltd. Liability Co.*, 991 F. Supp. 6 (D.D.C. 1997) ...........................18

*SEC v. Steadman*, 967 F.2d 636 (D.C. Cir. 1992) ...................................................13

*Semon v. Ledecky (In re United States Office Prod. Sec. Litigation*, 326 F. Supp. 2d 68 (D.D.C. 2004) ....................................................................................11

*Steinhardt Group, Inc. v. Citicorp.*, 126 F.3d 144 (3d Cir. Del. 1997) ...................................19, 20

*TSC Industrial, Inc. v. Northway, Inc.*, 426 U.S. 438 (1976) ......................................6, 7

*Van Arsdale v. Claxton*, 391 F. Supp. 538 ...................................................................................18

*In re Wellcare Management Group Sec. Litigation*, 964 F. Supp. 632 (N.D.N.Y. 1997) .............12

*In re Xerox Corp. Sec. Litigation*, 165 F. Supp. 2d 208 (D.Conn. 2001) .......................................12

## STATE CASES

*Childs v. Purll*, 882 A.2d 227 (D.C. 2005) ...................................................................................23

*Commerce Partnership 8098 Ltd. Partnership v. Equity Contr. Co.*, 695 So. 2d 383 (Fla.
    Dist. Ct. App. 4th Dist. 1997) .............................................................................................26

*George C. Hall & Sons, Inc. v. Taylor*, 1993 Me. LEXIS 225 (Me. July 27, 1993) ....................26

*Herring v. Offutt*, 266 Md. 593 (1972) ...........................................................................................4

*Jemison v. National Baptist Convention*, 720 A.2d 275 (D.C. 1998) ............................................27

*Jordan Keys & Jessamy, LLP v. St. Paul Fire & Marine Insurance Co.*, 870 A.2d 58
    (D.C. 2005) .....................................................................................................................26, 27

*Lampton v. LaHood*, 94 Md. App. 461 (Md. Ct. Spec. App. 1993) ..........................................4, 14

## FEDERAL AND STATE STATUTES

15 U.S.C. § 78(c) ............................................................................................................................18

15 U.S.C. §§ 78c(13) & (14) .....................................................................................................18, 22

15 U.S.C. § 78u-4 *et. seq* ................................................................................................................2

17 C.F.R. 240.10b-5 ..........................................................................................................................7

D.C. Code § 31-5601.01(31) ...........................................................................................................22

## MISCELLANEOUS

Restat. 3d. of Restitution and Unjust Enrichment § 29 ...................................................................26

Fed. R. Civ. P. 9(b) .........................................................................................................................24

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

REPUBLIC PROPERTY TRUST, *et al.*,

      Plaintiffs,

      v.

REPUBLIC PROPERTIES CORPORATION, *et al.*,

      Defendants.

Civil Action No. 1:07-cv-00595-RCL
 Judge Lamberth

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO STEVEN A. GRIGG'S
MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT**

      Plaintiffs Republic Property Trust ("RPT") and Republic Property Limited Partnership ("RPLP") file this Memorandum in Opposition to Defendant Steven A. Grigg's ("Grigg") Motion to Dismiss Plaintiffs' Amended Complaint Pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b), and show the Court as follows:

      RPT and RPLP incorporate herein by reference the Introduction, Factual Background and Controlling Legal Standard from Plaintiffs' Memorandum in Opposition to Motion of Defendant Richard Kramer ("Kramer") and Republic Properties Corporation ("RPC") to Dismiss the Amended Complaint, filed contemporaneously herewith.[1]

---

[1] RPT and RPLP's memorandum in opposition to Kramer and RPC's motion is referred to as the "RPC/Kramer Opposition Memo."

# ARGUMENT[2]

RPT and RPLP incorporate herein by reference the Argument from the RPC/Kramer Opposition Memo, filed contemporaneously herewith. By way of further response, RPT and RPLP state as follows:

## I.    RPT AND RPLP HAVE SUFFICIENTLY PLED A CLAIM FOR SECURITIES FRAUD UNDER SECTION 10(b) and RULE 10b-5

### A.    Principles of Law

RPT and RPLP do not dispute the Principles of Law set forth in Grigg's brief. (Grigg Memo at 6.) The elements of a cause of action under Section 10(b) of the Exchange Act and Rule 10b-5 are: (1) a material misstatement or omission, (2) made with scienter, (3) made in connection with the purchase or sale of a security, (4) involving the use of interstate commerce, (5) on which the plaintiff detrimentally relied, and (6) which caused injury to plaintiff. *E.g. Burman v. Phoenix Worldwide Indus.*, 2006 U.S. Dist. LEXIS 46071, at *11 (D.D.C. July 7, 2006); *In re Baan Co. Sec. Litig.*, 103 F. Supp. 2d 1, 11 (D.D.C. 2000). Securities fraud claims are subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b) and the pleading standards established by the PSLRA. 15 U.S.C. § 78u-4 *et. seq.* For the reasons set forth below, RPT and RPLP's securities fraud claim should proceed.

---

[2] For the Court's ease of reference, the Section numbers and arguments in RPT and RPLP's Argument correspond to the Section numbers and arguments in Grigg's brief.

### 1.     RPT and RPLP have Pled Fraud with Sufficient Particularity[3]

*The Liberti Relationship.*[4]   Grigg argues that RPT and RPLP's allegation that the

Defendants failed to disclose the "'full nature, extent and effect of the Liberti relationship' is not

the type of particularized claim that measures up to the Rule 9(b) standard." (Grigg Memo at 7.)

This argument is disingenuous and wholly ignores RPT and RPLP's detailed factual allegations.

RPT and RPLP dedicate 47 paragraphs of the Amended Complaint to describing in detail the

"full nature, extent and effect" of RPC, Kramer and Grigg's relationship with Liberti. (Am.

Compl. at ¶¶ 23-70.) These allegations, described as the "Liberti Relationship" in Section II(B)

of the Factual Background of the RPC/Kramer Opposition Memo, include detailed facts

regarding payments made by RPC to Liberti under a series of "consulting agreements," which

were approved by Grigg, with the knowledge of Kramer. (*Id.*) Likewise, RPT and RPLP allege

specific instances in which Liberti, as a member of the City Commission and Community

Redevelopment Agency and while he was on RPC's payroll, voted on matters affecting and

otherwise acted for the benefit of the City Center Project, the Professional Services Agreement,

and other business interests of Grigg and Kramer. (*Id.*) It is these specifically alleged facts

comprising the Liberti Relationship that Defendants failed to disclose to RPT and RPLP.[5]

Having pled these allegations in detail, summarizing them as the "full nature, extent and effect of

the Liberti relationship" does not render the Amended Complaint deficient.

---

[3] Section I(A)(1) of Grigg's brief makes a number of unrelated arguments. RPT and RPLP respond to each of these arguments in this section, and where appropriate, elaborate on their position in later sections of this brief.

[4] The term, "Liberti Relationship," as used herein, has the same meaning as the term "Liberti Relationship" as defined in the RPC/Kramer Opposition Memo at Factual Background, Section II(A).

[5] RPT and RPLP's federal securities fraud, District of Columbia securities fraud and common law fraud claims are based on Defendants' failure to disclose the facts related to the Liberti Relationship that occurred prior to the execution and delivery of the Development Contribution Agreement.

*Material Omissions and Mistatements.* As demonstrated in Sections 1(A)(2) and 1(B)(4), *infra*, Grigg's argument regarding the sufficiency of RPT and RPLP's allegations with respect to Defendants' material omissions are without merit.

*Personal Liability of Grigg.* Grigg's argument that he cannot be held liable for any of the omissions from or misleading statements in the Development Services Agreement is frivolous. First, at the time of the Development Contribution Agreement, Grigg was RPT's founder, President and Chief Development Officer, and the Vice-Chair of RPT's Board of Trustees. (Am. Compl. at ¶ 4.) Accordingly, he had a duty to disclose the Liberti Relationship. *Lampton v. LaHood,* 94 Md. App. 461, 480 (Md. Ct. Spec. App. 1993) (holding that the law is clear that those in a fiduciary capacity owe a "***duty of utmost good faith and loyalty and the obligation . . . to make full disclosure of all known information that is significant, and material* . . . .**") (emphasis added) (citations omitted);[6] *see Herring v. Offutt*, 266 Md. 593, 598 (1972) (same). The duty of a fiduciary to disclose material information applies to federal securities claims. *See, e.g., Chiarella v. United States*, 445 U.S. 222, 232-33 (1980) (holding that duty to disclose may arise if the parties had a fiduciary or agency relationship, or if prior dealings or circumstances were such that one party had placed trust or confidence in the other); *Powers v. British Vita, P.L.C.,* 57 F.3d 176, 189 (2d Cir. 1995) (holding that "fiduciary relationship or other relationship of trust and confidence can give rise to a duty to disclose material information; unique access to information can also trigger such a duty**"**).

Second, Grigg signed the Development Contribution Agreement on behalf of RPC. (Am. Comp. at ¶ 19.) Hence, pursuant to well-established federal securities law, Grigg is deemed to have made the statements therein. *See Howard v. Everex Sys.*, 228 F.3d 1057, 1061-63 (9th Cir.

---

[6] RPT is a Maryland REIT, thus Maryland law governs Kramer's fiduciary duties to the REIT.

2000) (corporate signatory can be held liable under Section 10b because "when a corporate officer signs a document on behalf of the corporation, that signature will be rendered meaningless unless the officer believes that the statements in the document are true"); *In re Lernout & Hauspie Sec. Litig.*, 230 F. Supp.2d 152, 163 (D. Mass. 2002) ("It is well established in this Circuit that each defendant may be held responsible [under Rule 10(b)] for the false and misleading statements contained in the financial statements he signed.") (citation omitted); *Newby v. Lay (In re Enron Corp. Sec., Derivative & ERISA Litigation)*, 258 F. Supp.2d 576, 587 (S.D. Tex. 2003) (collecting cases holding same).

    *The Assignment and Assumption Agreement.* At various points in his brief, Grigg draws unfounded conclusions from the Assignment and Assumption Agreement entered into on Octoer 19, 2006, between the REIT and the Community Redevelopment Agency and City of West Palm Beach. Contrary to Grigg's assertion that RPT and RPLP's arguments are "undercut by the fact that in October 2006 plaintiffs assigned the Professional Services Agreement back to the West Palm Beach Community Redevelopment Agency," (Grigg Memo at 8), the Assignment and Assumption Agreement merely shows that RPT and RPLP mitigated their damages when possible. In May 2006, as a result of the Liberti Relationship, the City and the Community Redevelopment Agency informed RPT and RPLP of their intent to terminate the Professional Services Agreement. (Am. Compl. at ¶ 79.) Subsequently, and in an effort to mitigate their damages, RPT and RPLP consented to the termination and were able to negotiate the Assignment and Assumption Agreement, which released them and their affiliates of all liability to the City and the Community Redevelopment Agency arising out of the Professional Services Agreement, including potential liability resulting from the Liberti Relationship. (Am. Compl. at ¶ 80.) The Community Redevelopment Agency never paid RPT or RPLP over $1 million it

owed for work in progress on the City Center Project, and RPT and RPLP had to forego future work on the project (*Id.* at ¶¶ 22, 60-61, 64, 77, 80.)  Both these and the other damages in the Complaint resulted directly from the Liberti Relationship.  Grigg now complains about the Assignment and Assumption Agreement, which effectively insulated Grigg and the other Defendants from even greater liability to RPT and RPLP.

### 2.    RPT and RPLP Have Sufficiently Pled A Fraudulent Omission

RPT and RPLP have alleged both a fraud by complete omission and fraud by omissions rendering misleading the specific representations contained in the Development Contribution Agreement.  An omission is material if there is a "substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable [party] as having significantly altered the 'total mix' of information made available."  *E.g., TSC Indus., Inc. v. Northway, Inc.* 426 U.S. 438, 449 (1976) (holding that an omission is material if "there is a substantial likelihood that a reasonable [person] would consider it important in deciding how to vote.").  Moreover, because RPT and RPLP have alleged Defendants complete failure to disclose the Liberti relationship, RPT and RPLP's reliance can be presumed.[7]  *Affiliated Ute Citizens v. United States*, 406 U.S. 128 (1972) (noting that in complete omission cases, reliance may be difficult to prove and can therefore be presumed); *accord, e.g., Eacho v. N D Resources, Inc.*, 1985 U.S. Dist. LEXIS 19558 (D.D.C. May 23, 1985).

RPT and RPLP have alleged that Defendants' failure to disclose the Liberti Relationship made the entire Development Contribution Agreement misleading and rendered worthless the Professional Services Agreement contributed by RPC to RPLP.  Had RPT and RPLP known of the Liberti relationship, RPT would not have caused RPLP to enter into the Development

---

[7] RPT and RPLP also have alleged reliance.  (*See* Am. Compl. at ¶¶ 107-108.)

Contribution Agreement and issue RPLP limited partnership units to RPC. (Am. Compl. at ¶¶ 105-108, 120-123, 146).

RPT and RPLP also have alleged that Defendants' failure to disclose the Liberti Relationship rendered certain specific statements in the Development Contribution Agreement misleading. Under Rule 10b-5, a statement, though literally true, may still be actionable if it is rendered misleading by the failure to disclose additional, material information. 17 C.F.R. 240.10b-5; *see, e.g., In re Par Pharmaceutical, Inc., Sec. Litig.*, 733 F. Supp. 668, 676-79 (S.D.N.Y. 1990) (denying motion to dismiss Rule 10b-5 claim based in part on literally true, but allegedly misleading statements). A "statement is misleading if a reasonable investor, in the exercise of due care, would have received a false impression from the statement." *In re Par Pharm., Sec. Litig.*, 733 F. Supp. at 677; *see TSC Indus.*, 426 U.S. at 449 (emphasis added) (a genuinely **misleading statement** is material and actionable if it "would have assumed actual significance in the deliberations of the **reasonable** shareholder"). The determination of whether a statement is misleading:

> must go to the jury unless the Court, drawing all reasonable inferences in favor of the plaintiff, determines that reasonable minds could not differ on the question of whether the statements alleged in the complaint were misleading in light of the circumstances under which they were made.

*In re Par Pharm., Sec. Litig.*, 733 F. Supp. at 677; *cf. Bielski v. Cabletron Sys. (in Re Cabletron Sys.)*, 311 F.3d 11, 34 (1st Cir. 2002) (reversing grant of motion to dismiss and holding that, "[i]n general, the materiality of a statement or omission is a question of fact that should normally be left to a jury rather than resolved by the court on a motion to dismiss").

RPT and RPLP have alleged that Section 2.10 of the Development Contribution Agreement was misleading because RPC expressly represented that "The Professional Services Agreement is in full force and effect and to the knowledge of RPC, neither it nor the Community

Redevelopment Agency is in default thereunder. . . ." (*See* Am. Compl. at ¶ 89.)  RPT and RPLP

allege that Defendants' failure to disclose the Liberti Relationship rendered this statement

misleading when made.  The statement was particularly misleading given the provisions of the

Professional Services Agreement, including:

- RPC's representation that it would "at all times conduct business in a reputable manner," (Section 6.3.2);

- RPC's representation that it had not retained or paid any person "contingent upon or resulting from the award of making of this Agreement," (Section 6.3.3); and,

- RPC's commitment to "promptly notify the [Community Redevelopment Agency] in writing by certified mail of all potential conflicts or [sic] interest or other circumstance that may influence or appear to influence [RPC's] judgment or the quality of services being provided thereunder," (Section 6.3.8).  (Am. Compl. at ¶ 90.)

Similarly, RPT and RPLP have alleged that Defendants' failure to disclose the Liberti

Relationship rendered misleading RPC's representation in the Development Contribution

Agreement regarding the validity and binding effect of the Development Contribution

Agreement and the agreements, documents and instruments executed pursuant to the Agreement

(Section 2.2).  (Am. Comp. ¶ 89.)

Whether the omissions of the Liberti Relationship rendered the entire Development

Contribution Agreement and specific representations therein misleading should be determined by

the trier of fact.  Therefore, Grigg's motion should be denied.

*Access to Information Regarding the Liberti Relationship.*  Grigg argues that RPT and

RPLP's Section 10(b) claim should be dismissed because the Liberti Relationship was known

within RPC.  The fact that Liberti was on RPC's payroll and that the Liberti Relationship was

known ***within RPC*** is meaningless.  The basis of RPT and RPLP's securities fraud claim is that

Defendants failed to disclose the Liberti Relationship ***to RPT and RPLP*** in connection with the

Development Contribution Agreement. Grigg's argument that RPT and RPLP could have discovered the Liberti Relationship through due diligence fails for several reasons.

First, whether RPT and RPLP exercised due diligence is not an appropriate inquiry on Grigg's motion to dismiss because nothing in the Amended Complaint indicates RPT and RPLP had access to information regarding the Liberti Relationship or that they failed to exercise due diligence in entering into the Development Contribution Agreement. Accordingly, this issue requires fact discovery.

Second, Grigg does not, and cannot, identify what measures RPT and RPLP should have taken to discover the Liberti Relationship. Certainly, RPT and RPLP were reasonable in expecting two of its founders, its President and Chief Development Officer, the Chair and Vice-Chair of its Board of Trustees, and the Company owned and controlled by them, to disclose the Liberti Relationship prior to entering into the Development Contribution Agreement. *See, e.g., Chiarella*, 445 U.S. at 232-33 (holding that duty to disclose may arise if the parties had a fiduciary or agency relationship, or if prior dealings or circumstances were such that one party had placed trust or confidence in the other).

Third, although Grigg cites to one case, *Hammerman v. Peacock*, 607 F. Supp. 911, 916 (D.D.C. 1985), in which the Court stated that plaintiffs must allege "due diligence," the case upon which the Court in *Hammerman* relied, *Hirsch v. Dupont,* 553 F.2d 750 (2nd Cir. 1977), did not so hold. Rather, the Court in *Hirsh* held only that in order to recover on a federal securities fraud claim, plaintiffs must "investigate the information available to them with the care and prudence expected from people blessed with full access to information." *Id.* at 763. Moreover, pleading the exercise of due diligence is not required by Section 10(b) or Rule 10b-5 and is more appropriately considered at a later stage in the proceedings. *See generally Royal American*

*Managers, Inc. v. IRC Holding Corp.*, 885 F. 2d 1011, 1015-16 (2d Cir. 1989) (holding that "[a]

showing of reliance may be defeated, however, where defendant establishes that plaintiff should

have *discovered* the true facts") (emphasis in original).

      *Grigg's Duty to "Accuse Himself of Wrongdoing.* Grigg's argument that he had no duty

to accuse himself of wrongdoing misses the point. (Grigg Brief at 9.) Although Defendants

were not required to accuse themselves of misconduct, they were required to disclose the

material information that underlies the alleged misconduct. *See, e.g., In re Par Pharm., Sec.*

*Litig.*, 733 F. Supp. at 674. In *In re Par Pharmaceutical, Inc.*, the Court held:

> Defendants rely heavily on a line of cases holding that a corporation is under no
> duty to announce publicly that it or its officers are guilty of uncharged criminal
> behavior, or to accuse itself of antisocial or illegal policies. However, these cases
> are not dispositive here. ***The illegality of corporate behavior is not a***
> ***justification for withholding information that the corporation is otherwise***
> ***obligated to disclose.*** *See also Roeder [v. Alpha Industries, Inc.,]* 814 F.2d [22,]
> 25 ("The securities laws do not operate under the assumption that material
> information need not be disclosed if management has a reason to suppress it"); . . .

733 F. Supp. at 674-75 (emphasis added; citations omitted.) Similarly, the cases relied on by

Grigg port non-disclosure of the Liberti Relationship. *See, e.g., Ballan v. Wilfred American*

*Educational Corp.*, 720 F. Supp. 241, 249 (E.D.N.Y. 1989) ("The fact that a defendant's act may

be a crime does not justify its concealment.").

      RPT and RPLP's claim is based on Defendants' failure to disclose the Liberti

Relationship, not Defendants' failure to accuse themselves of a crime. Regardless of whether the

Liberti Relationship involved criminal behavior, disclosure of its existence would have been

material to RPT and RPLP's decision to enter into the Development Contribution Agreement.

Therefore, Grigg's motion should be denied.

    **B.**    **RPT and RPLP have Pled Scienter with Sufficient Particularity**

        **1.**    **Applicable Standard**

The PSLRA requires plaintiffs to "plead with particularity facts that establish a 'strong inference' of scienter." *Burman*, 2006 U.S. Dist. LEXIS 46071, at *12 (denying motion to dismiss); *Semon v. Ledecky (In re United States Office Prod. Sec. Litig.*, 326 F. Supp. 2d 68, 75 (D.D.C. 2004). Although this Circuit has not decided the applicable standard for pleading a strong inference of scienter, District Courts have recently analyzed plaintiffs' claims under the Second Circuit standard, which recognizes that plaintiffs may plead scienter by alleging specific facts that either (1) constitute strong circumstantial evidence of conscious or reckless behavior or (2) establish motive and opportunity. *Burman v. Phoenix Worldwide Indus.*, 384 F. Supp. 2d 316, 331-334 (D.D.C. 2005) (scienter by extreme recklessness sufficiently pled); *Semon*, 326 F. Supp. 2d at 75. Regardless of the standard applied, courts look to the overall facts and circumstances alleged in the complaint to determine whether plaintiffs have adequately pled a strong inference of scienter. *See Novak v. Kasaks*, 216 F.3d 300, 311-12 (2d Cir. 2000). As demonstrated below, RPT and RPLP have met both of these standards with respect to Grigg.[8]

### 2. RPT and RPLP Have Pled Motive and Opportunity

In the context of securities fraud, motive entails "concrete benefits that could be realized by one or more…false statements and wrongful nondisclosures," and opportunity entails "the means and likely prospect of achieving concrete benefits by the means alleged." *Novak*, 216 F.3d at 307; s*ee Compudyne Corp. v. Shane*, 453 F. Supp.2d 807, 826 (S.D.N.Y. 2006) (plaintiff's allegations that defendants profited from illegal scheme to obtain shares in a private

---

[8] Grigg's analysis is based on the applicability of the Second Circuit standard, and RPT and RPLP use the same standard in this brief and in the RPC/Kramer Opposition Memo. Strong evidence of conscious or reckless behavior is sufficient to plead scienter under the standard applied in the majority of circuits. *See In re Fannie Mae Secs*, 2007 U.S. Dist. LEXIS 33939, *11 (D.D.C. May 8, 2007) ("A majority of federal courts of appeals have held that, in order to satisfy the PSLRA's pleading requirements, a plaintiff must plead facts giving rise to a strong inference of knowing misconduct or severe recklessness"). Other Circuits continue to permit plaintiffs to plead scienter through a motive and opportunity standard. *Id.*

offering at cheapest price possible in order to cover short sales and had knowledge of the private offering before it was made public sufficient to plead both motive and opportunity); *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 948-49 (9th Cir. 2004) (motive pled sufficiently where plaintiff alleged that defendants "knew the contested statement's most obvious interpretation was false when made" and possessed a motive to misrepresent status of stock sale); *In re Wellcare Mgmt. Group Sec. Litig.*, 964 F. Supp. 632, 639 (N.D.N.Y. 1997) (motive sufficiently pled where plaintiff alleged that defendants received an increased bonus as a result of fraudulently inflating profits and opportunity sufficiently pled where plaintiff alleged that defendants were president and CFO of company, signed company filings, and were familiar with company's financial condition); *In re Xerox Corp. Sec. Litig.*, 165 F. Supp.2d 208, 222 (D.Conn. 2001) (motive and opportunity sufficiently pled where plaintiffs allege defendants engaged in unusual insider trades).

　　Grigg does not, and cannot, argue that he lacked opportunity. *See, e.g., In re Complete Mgmt. Inc. Sec. Litig.*, 153 F. Supp.2d 314, 327 (S.D.N.Y. 2001) (holding opportunity "apparent" for all defendants because by virtue of their positions as principals, co-founders, and vice-presidents, they had the "opportunity to report false and misleading information" about corporation's accounting). Grigg argues only that RPT and RPLP have not pled motive with sufficient particularity.

　　Contrary to Grigg's argument, he had significant motive. By failing to disclose the Liberti Relationship at the time that RPC and RPLP entered into the Development Contribution Agreement, Grigg was able to rid his two person company, RPC, of the tainted Professional Services Agreement and, in exchange, RPC received for the benefit of Grigg 15,305 RPLP limited partnership units, valued at $180,420 at the time of their issuance. (Am. Compl. at ¶ 19-

21); Prospectus at p. 12.  Indeed, as of the time of this filing, Grigg's fraud has paid off.  RPC still holds valuable RPLP partnership units for the benefit of Grigg, while RPT and RPLP are saddled with the fallout from Liberti Relationship.  (*E.g.,* Am. Compl. at ¶¶ 21, 147.)

Grigg's argument that he stood to lose upon discovery of the fraud – which is true in all fraud cases – does not negate his motive and opportunity.  *See In re Dynex Capital Inc. Sec. Litig.*, 2006 WL 314524 at *10 (S.D.N.Y. Feb. 10, 2006) ("plaintiff need not allege a foolproof scheme to raise the requisite inference of scienter.  It is sufficient for plaintiff to plead facts showing that the [defendant] sought to make short term profits at the expense of unsuspecting investors.").  Additionally, absent recovery by RPT and RPLP in this litigation, Grigg's fraud has paid off.

### 3.    RPT and RPLP Have Pled Conscious or Reckless Behavior

Intentional misbehavior "encompasses deliberate illegal behavior."  *Novak*, 216 F.3d at 308.  Recklessness, for purposes of a Section 10(b) action, has been defined as conduct that is "highly unreasonable" and which "represents an extreme departure from the standards of ordinary care . . . to the extent that the danger was either known to the defendant or so obvious that the defendant must have been aware of it."  *Id.; see SEC v. Steadman*, 967 F.2d 636, 641-42 (D.C. Cir. 1992); *In re Dynex Capital Sec. Litig.*, 2006 WL 314524, at *8 (recklessness may be shown by knowledge of facts contradicting public statements); *see SEC v. Kenton Capital, Ltd.*, 69 F. Supp. 2d 1, 20 (D.D.C. 1998) (holding defendants' promotion of trading program by promising "incredible returns without any basis and without believing that they were achievable [to be] patently reckless behavior"); *SEC v. Huttoe*, 1998 U.S. Dist. LEXIS 23211 at *17-*26 (D.D.C. Sept. 14, 1998) (recklessness proved as a matter of law where newsletter author failed to disclose that he was paid to promote the stocks about which he wrote).

13

Here, RPT and RPLP have pled reckless behavior with sufficient particularity. Grigg is a founder and 15% owner of RPC, and, at the time of the Development Contribution Agreement, was RPC's President and CEO and a member of RPC's Board of Directors. (Am. Compl. at ¶ 4.) He met with Liberti and *orchestrated the Liberti Relationship.* Specifically, he caused RPC to enter into the Liberti Relationship, executed a series of "Consulting Agreements" with Liberti, and authorized RPC to pay Liberti $126,000, all while Liberti was voting and otherwise acting for the benefit of RPC's role in, among other things, the City Center Project and the Professional Services Agreement. The specifics of the Liberti Relationship, including payments authorized by Grigg and made by RPC, and the votes cast by Liberti, are set forth in detail in Paragraphs 23 through 70 of the Amended Complaint.

Grigg also is a founder of RPT and, at the time of the Development Contribution Agreement, was also RPT's President and Chief Development Officer and the Vice-Chair of RPT's Board of Trustees. (*Id.*) In both his capacity as founder, owner, President and Board member of RPC, and in his capacity as founder, President and Chief Development Officer of RPT, and Vice-Chair of RPT's Board, Grigg knew that RPC was assigning the Professional Services Agreement to RPT; indeed, he was the individual most familiar with the Professional Services Agreement, stood on both sides of the transaction, and executed the Development Contribution Agreement on behalf of RPC. (Am. Compl. at ¶¶ 15-22.) Given the nature of his relationship with RPT, he also knew that RPT legally could rely on him to disclose all material information regarding the Development Contribution Agreement. *Lampton v. LaHood,* 94 Md. App. 461, 480.

Despite his knowledge, and ignoring his duties to RPT, Grigg endorsed the statements in the Development Contribution Agreement and stood silent and benefited – both personally and

14

through his ownership interest in RPC – from the Development Contribution Agreement. (*E.g.,* Am. Compl. at ¶¶ 21, 88, 102-110.) These facts constitute sufficient circumstantial evidence of intentional or reckless behavior to raise a strong inference of scienter.

### 4.    RPT and RPLP's Claims are Not Based on Fraud by Hindsight

Grigg argues that he "had no duty to predict the future," and that RPT and RPLP's claims should therefore be dismissed. (Grigg Memo at 13.) Grigg's arguments mischaracterize RPT and RPLP's claim and misapply the law. RPT and RPLP's omission claim is based on Defendants' failure to disclose the Liberti Relationship, not on Defendants' "lack of clairvoyance in September 2005" of the ultimate outcome of the Liberti Relationship. Accordingly, Grigg's reliance on *In re Par Pharmaceuticals,* and *Acito v. IMCERA Group*, 47 F.3d 47 (2d Cir. 1995), is misguided.

In *In re Par Pharmaceuticals,* the Court denied a motion to dismiss Section 10(b) claims that were based on the defendants' alleged failure to disclose facts regarding a bribery scheme. Though the Court held that the defendants had no duty to speculate as to the ***potential effects*** of the scheme, it held that the plaintiffs' allegations regarding the failure to disclose the ***existence*** of the bribery scheme were "sufficient to withstand defendants' motions to dismiss for failure to state a claim under Rule 10b-5". *In re Par Pharmaceuticals*, 733 F. Supp. at 673-79.

*Acito,* also relied upon by Grigg, is completely inapposite to RPT and RPLP's claims. There, a court held that information regarding two prior FDA inspections of a facility were immaterial, and that defendants had no duty to speculate as to the results of a third ***future*** inspection. 47 F.3d 47. Nowhere in *Acito* did the Court hold that the defendants had no duty to disclose presently available material facts, the omission of which was deceptive. *Id., see In re: Independent Energy Holdings PLC Sec. Litig.*, 154 F. Supp.2d 741, 760 (S.D.N.Y 2001)

15

("[w]hile defendants correctly note that the securities laws may not require disclosure of possible future sanctions . . . *they certainly require disclosure of information that would permit an investor to appreciate the risk that the future sanction may arise*") (emphasis added).

Because RPT and RPLP's claim is based on the failure of Defendants to disclose the Liberti Relationship – *i.e.,* those facts known by Grigg, RPC and Kramer at the time of the Development Contribution Agreement's execution – their securities fraud claim is not based on hindsight. Clearly, RPT and RPLP were entitled to information regarding the Liberti Relationship in order to permit them to appreciate the risk of the ultimate outcome here – termination of the Professional Services Agreement.

### C.    RPT and RPLP Have Pled Loss Causation

In *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336 (2005), the Supreme Court set forth the following standard with respect to pleading loss causation:

> We concede that the Federal Rules of Civil Procedure require only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). And we assume, at least for argument's sake, that neither the Rules nor the securities statutes impose any special further requirement in respect to pleading proximate causation or economic loss. But, even so, the "short and plain statement" must provide the defendant with "fair notice of what the plaintiff's claim is and the grounds upon which it rests." [cit.]

*Id.* at 346. In *Dura,* the Supreme Court reversed the Ninth Circuit's holding that loss causation was pled sufficiently by mere allegations that the stock "price on the date of purchase was inflated because of the misrepresentation," *id.* at 342, and further held that the plaintiffs had not adequately alleged loss causation because they did not include facts alleging that "share price fell significantly after the truth became known." *Id.* at 347. The Supreme Court noted that, in a typical securities fraud case, discovery and disclosure of securities fraud is normally but one of a "tangle of factors" affecting stock price and that paying a higher purchase price will therefore only "*sometimes* play a role in bringing about a future loss." *Id.* at 343 (emphasis in original).

16

Accordingly, the Court in *Dura* held that plaintiffs in a securities fraud action must allege and prove traditional common law elements of loss causation – it did not impose a higher pleading standard on securities fraud cases. *Id.* at 346-47.

None of the pleading problems addressed in *Dura* presents themselves here. RPT and RPLP have alleged that they were defrauded by Defendants' failure to disclose the Liberti Relationship and that they suffered injury as a direct and proximate result of the Liberti Relationship and its disclosure in May 2006. Indeed, the City and the Community Redevelopment Agency explicitly informed RPT and RPLP that they intended to terminate the Professional Services Agreement "after the truth became known" regarding the Liberti Relationship. (Am. Comp. at ¶ 77 ["*In May 2006, as a result of the improper and undisclosed payment by RPC to Liberti, the City and the Community Redevelopment Agency provided notice to RPT/Republic WPB of their intent to terminate the Professional Services Agreement.*"] (emphasis added).) The Liberti Relationship and its discovery were not merely the direct and proximate cause, but the ***only cause,*** of all of the losses suffered by RPT and RPLP. These losses include: (1) the termination of the Development Contribution Agreement and the lost future profits associated therewith, (Am. Compl. at ¶¶ 22, 60-61, 64, 77, 80); (2) the City and the Community Redevelopment Association's refusal to pay RPT and RPLP approximately $1,000,000 million owed for work in progress, (*Id.*); (3) the costs associated with RPT's internal and independent investigations, (*Id.* at ¶¶ 81-87); and (4) RPT's costs and attorneys fees incurred in this litigation. (*Id.* at ¶140).[9] RPT and RPLP have satisfied *Dura*'s meager loss causation pleading standard, and their federal securities fraud claim should proceed.

---

[9] RPT and RPLP are not seeking recovery for all of these categories of damages on their Section 10-b claim, but include all of them to show the extent of the loss causation allegations in the Amended Complaint and the lack of any basis for Grigg's argument.

**D.**    **The Development Contribution Agreement Involved the Sale of Securites**

Grigg's argument that the RPLP limited partnership units are not securities is both wrong and premature. The Exchange Act provides a flexible definition for the term "securities," 15 U.S.C. § 78(c)(a)(10), which has been interpreted to include limited partnership interests in limited partnerships where the limited partners do not have a significant managerial role over the partnership's affairs. *See, e.g., Mayer v. Oil Field Systems Corp.*, 721 F.2d 59, 65 (2d Cir. 1983); *see also., Randall v. Loftsgaarden*, 478 U.S. 647, 665 (1986) (stating that the petitioners' interests in a limited partnership constituted securities); *SEC v. Parkersburg Wireless Ltd. Liab. Co.*, 991 F. Supp. 6, 7-8 (D.D.C. 1997) ("it is clear that the interests sold in [the limited partnership] are securities"); *Rodeo v. Gillman*, 787 F.2d 1175 (7th Cir. 1986); *Frazier v. Manson*, 651 F.2d 1078 (5th Cir. 1981); *Goodman v. Epstein*, 582 F.2d 388 (7th Cir. 1978); *Van Arsdale v. Claxton*, 391 F. Supp. 538 S.D. Cal. 1975).

The Exchange Act provides that, "[t]he terms 'buy' and 'purchase' each include any contract to buy, purchase, ***or otherwise acquire***," and "[t]he terms 'sale' and 'sell' each include any contract to sell or ***otherwise dispose of.***" 15 U.S.C. §§ 78c(13) & (14) (emphasis added). Here, RPT is the 88% owner and sole general partner of RPLP, and exercises complete control over the day to day business of RPT. (Am. Compl. at ¶ 2). As a result, RPC's limited partnership interest in RPLP is a security. *See Mayer*, 721 F.2d at 65. In connection with the Development Contribution Agreement, RPT and RPLP disposed of 100,234 RPLP limited partnership units and RPC acquired those units. Therefore, the Development Contribution Agreement involved the purchase or sale of securities.

**1.**    **The Limited Partnership Units are Securities Under Federal Law**

18

RPT and RPLP have unambiguously alleged that the RPLP limited partnership units are securities, (Am. Compl. at ¶ 104), and have alleged facts underlying this allegation – that RPT is the sole general partner of RPLP and has exclusive control over RPLP's business dealings. (Am. Compl. at ¶ 2). Grigg argues that, because he is affiliated with both RPC and RPT, RPC's limited partnership interest – which gives it no right to control the affairs of RPT – should somehow be viewed as something other than a security. (Grigg Memo at 17.) As an initial matter, Grigg's argument is premature. Whether the RPLP limited partnership units are securities is a fact issue that is not ripe on Grigg's motion to dismiss.

Grigg's argument also fails as a matter law. Under Grigg's analysis, the shares owned by the CEO of a company would not be securities because the CEO exercises control of the Company's business; however, that is not the case because the CEO exercises control as the CEO, not as a shareholder. Here, RPC has no ability – *in any capacity* – to assert influence or control over RPLP, and neither Kramer nor Grigg has any such ability either as *limited partners of RPLP or owners of RPC*. Therefore, RPT and RPLP have sufficiently pled that RPLP limited partnership units are securities.

The case primarily relied upon by Grigg, *Steinhardt Group, Inc. v. Citicorp.*, 126 F. 3d 144 (3d Cir. Del. 1997), further demonstrates the fallacy of Grigg's reasoning. In *Steinhardt,* the court held that that the *limited partnership interests* at issue were securities because:

> The [Limited Partnership Agreement] gives [the Limited Partner, who owned a 98.7% interest in the partnership] pervasive control over the management of the Partnership. Indeed, these quite significant powers are far afield of the typical limited partnership agreement whereby a limited partner leaves control of the business to the general partners.

19

*Id.* at 154. The First Amended and Restated Agreement of Limited Partnership of RPLP (the "Partnership Agreement") stands in stark contrast to the partnership agreement in *Steinhardt*.[10] The Partnership Agreement provides the ***limited partners*** – here RPC – with no control over the affairs of RPT. Rather, as is consistent with circumstances under which limited partnership interests have been held to be securities, the ***general partner***, RPT, is charged with, among others, the following management rights and duties:

> A. <u>Powers of the General Partner</u>.  Except as otherwise expressly provided in this Agreement, all management powers over the business and affairs of the Partnership are and shall be exclusively vested in the General Partner, and no Limited Partner shall have any right to participate in or exercise control or management power over the business and affairs of the Partnership.  The General Partner may not be removed by the Limited Partners with or without cause . . . [T]he General Partner . . . shall have full power and authority to do all things deemed necessary or desirable by it to conduct the business of the Partnership . . .

> B. ***No Approval by Limited Partners***.  . . .  [E]ach of the Limited Partners Agrees that the General Partner is authorized to execute, deliver and perform the above-mentioned agreements and transactions on behalf of the Partnership without any further act, approval or vote of the Partners . . .

Partnership Agreement at § 7.1 (emphasis added).  The Partnership agreement goes on to provide that:

> ***No Limited Partner or Assignee*** (other than the General Partner, any of its Affiliates, or any officer, director, employee, partner, agent or trustee of the General Partner, the Partnership of any of their Affiliates, ***in their capacity as such***) ***shall take part in the operation, management or control . . . of the Partnership's business***, transact any business in the Partnership's name or have any power to sign documents for or otherwise bind the Partnership."

---

[10] The Partnership Agreement is incorporated by reference into the Development Contribution Agreement at Section 6.3, and is therefore part of the Development Contribution Agreement. *Air Line Pilots Asso, Int'l v. Delta Air Lines, Inc.*, 863 F.2d 87, 94 (D.C. Cir. 1988) ("It is generally held that '[W]hen a document incorporates outside material by reference, the subject matter to which it refers becomes a part of the incorporating document just as if it were set out in full.'") (citations omitted).  RPT's rights under the Partnership Agreement are also set forth in the Amended Complaint.  Accordingly, the Court may consider the Partnership Agreement on Grigg's motion. *See Felder v. Johanns*, 2007 U.S. Dist. LEXIS 38001 (D.D.C. May 25, 2007).  Even if the Court does not consider the Partnership Agreement, RPT and RPLP have pled that the RPLP limited partnership units issued to RPC are securities, and their claim should proceed.

Partnership Agreement at § 8.2 (emphasis added). Based on the language in the Partnership Agreement itself, RPLP limited partnership interests were clearly intended to be the type of investment that qualifies as a "security" under federal law.

Significantly, RPT, RPLP and RPLP's limited partners, ***including Grigg and RPC***, have treated RPLP limited partnership units as securities under federal law. For example, each agreement pursuant to which RPLP limited partnership units were issued, including the Development Contribution Agreement, contained standard representations made by the recipient of the units regarding securities and securities law. *See, e.g.,* Development Contribution Agreement at § 2.9 (Securities Law Matters; Transfer Restrictions). Moreover, each issuance of RPLP limited partnership units, including the units issued to RPC in connection with the Development Contribution Agreement and units issued to Grigg in connection with other agreements, has been accompanied by the filing by Grigg with the SEC of a Form D, notifying the SEC of the issuance of covered securities exempt from registration by Rule 506 under Regulation D of the Securities Act of 1933.

Only now, when confronted with the ramifications of Defendants' conduct, does Grigg change his historical position and ask this Court to decide that the limited partnership interests issued to RPC in connection with the Development Contribution Agreement are not securities. The above limited examples of the legal authority and facts make clear that these efforts are doomed to fail. RPT will ultimately establish what it has sufficiently pled – that RPLP limited partnership units are securities. Therefore, the Court should deny Grigg's motion to dismiss.

> **2.    The Limited Partnership Units are Securities Under District of Columbia Law**

For the reasons set forth above, RPT and RPLP have sufficiently pled that the RPLP limited partnership units issued to RPC are securities under federal law. RPLP limited

partnership units also are securities under District of Columbia law. The District of Columbia securities code explicitly defines "security" to include a "limited partnership interest." D.C. Code § 31-5601.01(31). Indeed, as will be established by the record, the parties have at all times treated RPLP limited partnership units as securities under D.C. law. For example, each issuance of RPLP limited partnership units, including the units issued to RPC in connection with the Development Contribution Agreement, has been accompanied by correspondence and the filing of appropriate disclosures with the D.C. Department of Insurance and Securities Regulation.

In any event, RPT and RPLP have pled that the RPLP limited partnership units are securities. Whether the evidence will ultimately prove these allegations is not an appropriate inquiry on Grigg's motion to dismiss.

### 3.  The Development Contribution Agreement Involved a Sale and Purchase of Securities

Grigg's argument that the Development Contribution Agreement did not involve the purchase or sale of securities is frivolous. RPT caused RPLP to dispose of and RPC acquired 100,234 RPLP limited partnership units. This transaction falls both within the statutory definition of a purchase and sale, and within the case law cited by Grigg. 15 U.S.C. §§ 78c(13) & (14); *see Rathborne v. Rathborne*, 683 F.2d 914, 918 (5th Cir. 1982).

The Development Contribution Agreement did not involve an "exchange of shares between a parent corporation and wholly controlled subsidiary," (Grigg Memo at 19) nor did it involve a stock for assets sale between one company and another company "spawned and wholly controlled" by it (*Id.*) Indeed, the Development Contribution Agreement involved the "transfer of ownership" and "surrender of control," (*Id.*), of (1) the Professional Services Agreement by RPC for (2) RPLP limited partnership units. RPT and RPLP are not in any way affiliated with

RPC.[11]  Certainly, Grigg and Kramer stood on both sides of the transaction, and owed fiduciary duties to RPT, but that only makes the fraud more troubling; it does not eliminate RPT and RPLP's cause of action for securities fraud.  In any event, RPT and RPLP have adequately alleged that the Development Contribution Agreement involved the purchase and sale of a security, and Grigg's motion should be denied.

## II.     RPT AND RPLP HAVE SUFFICIENTLY PLED COMMON LAW FRAUD

Because RPT and RPLP have pled federal securities fraud with sufficient particularity, they necessarily also have pled common law fraud with sufficient particularity.  *E.g. Burman*, 2006 U.S. Lexis 46071 at *5 (D.D.C. 2006) ("Because this Court concludes that plaintiffs' second amended complaint satisfies the pleadings requirements for the PSLRA, it must conclude that the pleadings requirements for common law fraud are also satisfied.")

Moreover, as demonstrated above, Grigg's arguments with respect to common law fraud are without merit.  First,  the Amended Complaint sets forth both material omissions and misleading statements made by Grigg as signatory to the Development Contribution Agreement.  *See also Childs v. Purll*, 882 A.2d 227, 239 (D.C. 2005) *quoting Vuitch v. Furr*, 482 A.2d 811, 821 (D.C. 1984) (holding that corporate officers "are personally liable for the torts which they 'commit, participate in, or inspire,' even though the acts are performed in the name of the corporation").  Second, RPT and RPLP have sufficiently pled the materiality of the omissions and misleading statements.  Third, Grigg had an affirmative duty to disclose the Liberti Relationship.  Fourth, RPT and RPLP's claims are based on Grigg's failure to disclose the Liberti Relationship, not his failure to accuse himself of wrongdoing or failure to "be clairvoyant

---

[11] Indeed, RPT's Prospectus, filed with the SEC, lists RPC as an outside business interest of Grigg and Kramer. Prospectus at 106.

as to what might happen in the future to Mr. Liberti." (Grigg Memo at 21). Fifth, Grigg was, at

best, extremely reckless in entering into the Liberti Relationship and failing to disclose the

Liberti Relationship at the time of the execution of the Development Contribution Agreement.

Finally, plaintiffs may plead scienter generally to state a claim for common law fraud. Fed. R.

Civ. P. 9(b). Therefore, Grigg's motion should be denied.

## III.    RPT AND RPLP HAVE SUFFICIENTLY PLED SECTION 20(a) CONTROL PERSON LIABILITY AGAINST GRIGG

Grigg does not argue that RPT and RPLP have failed to sufficiently plead that Grigg was

a control person of RPC, or that Grigg acted with culpable participation. (Grigg Memo at 22.)[12]

Rather, Grigg's sole basis for dismissal of RPC and RPLP's Section 20(a) claim against Grigg is

that RPT and RPLP have failed to plead an underlying violation of Section 10(b) against RPC.

As demonstrated Section I, *supra*, and in Section I of the RPC/Kramer Opposition Memo, RPT

and RPLP have sufficiently pled primary violations of Section 10(b) and Rule 10b-5 against

RPC. Therefore, Grigg's motion should be denied.

## IV.    RPT AND RPLP HAVE SUFFICIENTLY PLED A CLAIM FOR SECURITIES FRAUD UNDER THE DISTRICT OF COLUMBIA CODE[13]

---

[12] Although Grigg incorporates by reference the Control Person Liability Arguments made by RPC and Kramer, those arguments assert only that RPT and RPLP have failed to adequately plead control person liability against Kramer, and do not mention Grigg. Even if RPC and Kramer had made some argument with respect to Grigg, as shown by RPT and RPLP in Section II of the Argument of the RPC/Kramer Opposition Memo, culpable participation is not part of the appropriate pleading standard for control person liability. Moreover, Grigg could not seriously argue that he was not a culpable participant given the pervasive nature of his relationship with Liberti, his approval of payments to Liberti, his knowledge of Liberti's actions and his causing RPC to enter into the Development Contribution Agreement.

[13] Tellingly, other than arguing that RPT and RPLP have failed to plead a primary violation, Grigg does not challenge RPT and RPLP's District of Columbia control person claim. Section 31.6506(c) provides:

A person who directly or indirectly controls a person liable under subsection (a) of this section; a partner, officer, or director of the person liable . . . shall be liable jointly and severally with, and to the same extent as the person liable, unless her or she is able to sustain the burden of proof that he or she did not know, and, in exercise of reasonable care could not have known, of the existence of the facts by reason of which the liability is alleged to exist. There shall be contribution among the several persons so liable.

24

Grigg's argument that RPT and RPLP have failed to plead a claim for violations of D.C. securities laws fails for several reasons. First, as demonstrated in Section I, *supra*, RPT and RPLP have sufficiently pled a claim for federal securities fraud under the heightened pleading requirements of the PSLRA. Accordingly, they have also sufficiently pled a claim for violations of District of Columbia securities fraud under the less stringent standards of Rule 9(b).

Second, RPT and RPLP do have a direct claim against Grigg. Section 31-5605.2(a)(1) of the District of Columbia Code provides that it shall be unlawful for any person, in connection with the sale of a security, to:

(A) Employ a device, scheme, or artifice to defraud;

(B) Obtain money or property by means of an untrue statement of a material fact or an omission to state a material fact in order to make the statements made, in the light of the circumstances under which they are made, not misleading; or

(C) Engage in a transaction, practice, or course of business which operates, or would operate, as a fraud or deceit upon a person; . . .

Section 31-6506.05(a)(3)(B)(ii) provides that, "a person shall be civilly liable to another person if the person . . . [e]mploys an [sic] device, scheme, or artifice to defraud the other person or engages in an act, practice, or course of business which operates or would operate as a fraud or deceit on the other person." Therefore, for the reasons stated in Section I, *supra*, RPT and RPLP have sufficiently pled violations of Section 31-5605.2(a)(1) and Section 31-5606(a)(3)(B)(ii) against Grigg.

Moreover, Grigg should be considered a purchaser for purposes of Section 31-5606.05(a)(2). Grigg is one of two owners of RPC, owns 15% of RPC and RPC received 15,305 RPLP partnership units, valued at over $180,420, for the benefit of Grigg. (Am. Compl. at ¶¶ 4, 21); Prospectus at 12.

Because RPT and RPLP have pled a direct cause of action against RPC for District of Columbia Securities Fraud Violations, (*see* Kramer/RPC Opposition Memo at Argument, § IV), RPT and RPLP also have sufficiently pled a claim for control person liability against Grigg under District of Columbia law.  Consequently, Grigg's motion should be denied.

## V.    RPT AND RPLP HAVE SUFFICIENTLY PLED A CLAIM FOR UNJUST ENRICHMENT

Grigg erroneously contends that the mere existence of the Development Contribution Agreeement requires dismissal of RPT's unjust enrichment claim.  (Grigg Memo at 24.) Contrary to Grigg's assertions, a contract bars an unjust enrichment claim only where the unjust enrichment results from a contract and where ***both the claimant and the defendant are parties to the contract***. *Jordan Keys & Jessamy, LLP v. St. Paul Fire & Marine Ins. Co.*, 870 A.2d 58, 64 (D.C. 2005) (holding that the rule only "makes sense where a contract exists between the party seeking recovery on the basis of unjust enrichment and the party alleged to have been unjustly enriched").  Where the defendant is not a party to the contract at issue, the existence of the contract does not prevent recovery against the defendant for unjust enrichment. *See id.*; *see also Commerce P'ship 8098 Ltd. P'ship v. Equity Contr. Co.*, 695 So. 2d 383, 385-90 (Fla. Dist. Ct. App. 4th Dist. 1997) (holding that a subcontractor who had an express contract with a general contractor could recover against the owner of the property for unjust enrichment); *George C. Hall & Sons, Inc. v. Taylor*, 1993 Me. LEXIS 225 at *3 (Me. July 27, 1993) ("Contrary to [the defendant's] assertion that there can be no recovery in quasi-contract when, as here, an express contract exists, recovery against a third party on a theory of unjust enrichment is not always precluded as a matter of law"); *cf.* Restat. 3d. of Restitution and Unjust Enrichment § 29 (Tentative Draft No. 3 (2004)) ("A person who has conferred a benefit on a recipient as the performance of a contract with a third person is entitled to restitution from the recipient upon the

failure of performance by the third person, but only as necessary to prevent unjust enrichment.").

The Court in *Jordan Keys* opined:

> where A, who claims that B has been unjustly enriched at A's expense, has a contract with C rather than with B…. It is not at all clear to us that…the existence of a contract with C should automatically bar A's claim of unjust enrichment against B.

*Jordan Keys*, 870 A.2d at 64. Recovery for unjust enrichment is designed specifically to address the situation where the litigants are not both parties to a contract. *Bloomgarden v. Coyer*, 479 F.2d 201, 210 (D.C. Cir. 1973).

Here, Grigg is not a party to the Development Contribution Agreement and RPT and RPLP can therefore properly bring an unjust enrichment claim against him. Contrary to Grigg's argument that RPT and RPLP have not alleged the benefit conferred upon Grigg, RPT and RPLP have alleged that RPC is holding for Grigg 15,305 of the RPLP limited partnership units it received in connection with the Development Contribution Agreement. (Am. Compl. at ¶ 21.) Accordingly, RPT and RPLP have properly asserted a claim for unjust enrichment against Grigg, and his motion should be denied.

## VI.    RPT AND RPLP HAVE ADEQUATELY PLED ENTITLEMENT TO PUNITIVE DAMAGES

Punitive damages are appropriate if the plaintiff can show that an intentional tort was accompanied by "fraud, ill will, recklessness, wantonness, oppressiveness, willful disregard of the plaintiff's rights, or other circumstances tending to aggravate the injury." *Jemison v. National Baptist Convention,* 720 A.2d 275, 286 (D.C. 1998) (citations omitted). *Kolstad v. ADA*, 139 F.3d 958, 965 (D.C. Cir. 1998). As established above RPT and RPLP's fraud claim should not be dismissed for failure to state a claim, and RPT and RPLP has alleged that Defendants' actions showed "willful misconduct, malice, fraud wantonness, oppression, and/or that entire want of care that would raise the presumption of conscious indifference to

27

consequences." (Am. Compl. at ¶ 158.) If RPT and RPLP prove these allegations, they would be entitled to recover punitive damages in this action. Therefore, RPT has properly pled an entitlement to punitive damages.

## **CONCLUSION**

For the reasons set forth herein, RPT and RPLP respectfully request that this Court deny Grigg's Motion to Dismiss in its entirety.

Dated:   June 13, 2007

Respectfully submitted,

/s/ Mark E. Nagle
Mark E. Nagle, Bar No. 416364
Tracy P. Varghese, Bar No. 472805
TROUTMAN SANDERS LLP
401 9th Street, N.W., Suite 1000
Washington, D.C. 20004
(202) 274-2972
mark.nagle@troutmansanders.com

*Counsel for Republic Property Trust and*
*Republic Property Limited Partnership*

**CERTIFICATE OF SERVICE**

I hereby certify that a true copy of the foregoing was served electronically via the ECF System of this Court this 13th day of June, 2007 to:

William T. Burke
WILLIAMS & CONNOLLY LLP
725 12th Street, N.W.
Washington, D.C. 20005

*Counsel for Republic Properties Corporation*
*and Richard L. Kramer*

Seymour Glanzer
Richard J. Conway
Marianela Peralta
DICKSTEIN SHAPIRO LLP
1825 Eye Street, N.W.
Washington, D.C. 20006

*Counsel for Steven A. Grigg*


/s/ Tracy P. Varghese_____

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

REPUBLIC PROPERTY TRUST, *et al.*,

      Plaintiffs,

      v.

REPUBLIC PROPERTIES CORPORATION, *et al.*,

      Defendants.

Civil Action No. 1:07-cv-00595-RCL
Judge Lamberth

**ORDER**

      Upon consideration of the motion of Defendant Steven A. Grigg to dismiss the Amended Complaint in the above-captioned case, Plaintiffs' Opposition thereto, and the entire record herein, it is by the Court this __ day of _____, 2007

      **ORDERED** that the motion to dismiss, be, and hereby is, **DENIED**.

_____
UNITED STATES DISTRICT JUDGE