IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| REPUBLIC PROPERTY TRUST, *et al.*<br><br>Plaintiffs,<br><br>v.<br><br>REPUBLIC PROPERTIES CORPORATION, *et al.*<br><br>Defendants. | Civil Action No. 1:07-cv-00595-RCL |

**REPLY IN SUPPORT OF DEFENDANTS RICHARD L. KRAMER AND
REPUBLIC PROPERTIES CORPORATION'S
<u>MOTION TO DISMISS THE AMENDED COMPLAINT</u>**

Plaintiffs' Opposition cannot save their Amended Complaint. All of Plaintiffs' claims should be dismissed.

1. <u>That RPC made payments to Liberti "while" Liberti was a member of the Community Redevelopment Agency does not state a claim for fraud under Section 10(b), the D.C. Code or the common law.</u> Plaintiffs' fraud causes of action (Counts I-IV, VII) are based entirely on the allegation that RPC and Kramer were obligated to disclose that RPC made payments to Liberti while Liberti voted "on issues involving the Professional Services Agreement and the City Center Project, and had otherwise attempted to achieve favorable outcomes for RPC in the City." Am. Compl. ¶ 103. In support of their position, Plaintiffs cite the Supreme Court for the proposition that an omission is material if there is a "substantial

likelihood that the disclosure of the omitted fact would have been viewed by the reasonable [party] to have significantly altered the 'total mix' of information available." Pls.' Mem. at 14-15 (quoting *TCS Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 449 (1979)). But Plaintiffs plead no basis for believing a routine consulting contract with a government official, for a relatively minor amount of money, that explicitly excluded consulting on matters within the City of West Palm Beach, would have assumed "actual significance" in RPT's deliberations <u>absent</u> a characterization of the contract as a bribe. *Id.* That accusation, however, is one Plaintiffs studiously avoid. Instead, they continue to assert only that payments were made to Liberti <u>while</u> he was a voting member of the CRA, not <u>in exchange for</u> his votes. It is also a characterization that Kramer and RPC had and have no obligation to adopt. *See Ciresi v. Citicorp*, 782 F. Supp. 819, 823 (S.D.N.Y. 1991); *In re Citigroup, Inc. Sec. Litig.*, 330 F. Supp. 2d 367, 377 (S.D.N.Y. 2004).

Absent a characterization of the so-called "Liberti Relationship" as a *quid pro quo* exchange of money for votes, Plaintiffs plead no basis for why Defendants had a duty to disclose the consulting arrangement <u>except</u> the unforeseen turn of events involving Liberti over a year after the Development Contribution Agreement was signed. Plaintiffs insist they are not asking that Kramer and RPC be held liable for failing to disclose speculations about the effect of the consulting arrangement, but their theory of the case fails to account for the critical role played by Liberti's unrelated arrest. Plaintiffs' recitation of the facts is telling. There is no allegation indicating anyone cared about a consulting arrangement between RPC and Liberti until the day he was arrested on unrelated charges. On the very day Liberti was arrested, however, the mayor of West Palm Beach called RPC's Steven Grigg and "inquired about the relationship between RPC, Grigg and Liberti," Am. Compl. ¶ 72, the first step leading to the alleged termination of the

Professional Services Agreement. To have perceived any need to disclose the consulting arrangement, Kramer and RPC would have had to foresee Liberti's unrelated criminal conduct and the reaction of the political establishment of the City of West Palm Beach. "Speculation" would be the most generous term one could apply to any such chain of reasoning. *See Consolidated Gold Fields, PLC v. Anglo American Corp. of South Africa Ltd.*, 713 F. Supp. 1457, 1470 (S.D.N.Y. 1989) (a "company is not required to speculate about future events which are unlikely to occur").

        To that end, Plaintiffs' attempt to distinguish *Acito v. Imcera Group, Inc.*, 47 F.3d 47 (2d Cir. 1995), is unavailing. In *Acito*, plaintiffs claimed the results of two FDA inspections should have been disclosed because they "put defendants on notice that a third inspection would result in negative consequences." *Id.* at 53. The court found the results of the first two inspections, standing alone, were not material, and defendants' "lack of clairvoyance" concerning the consequences of the third inspection "simply does not constitute securities fraud." *Id.* The same is true here. That RPC did not disclose its consulting arrangement with Liberti, standing alone, was not a material omission, and Defendants' inability to foresee Liberti's subsequent unrelated criminal conduct and the termination of the Professional Services Agreement does not make it one. "'[F]raud by hindsight' [is not] a viable basis upon which to challenge management practices that ultimately result in losses." *In re Citigroup*, 330 F. Supp. 2d at 377.

        2.    <u>Plaintiffs fail to plead scienter under the PSLRA.</u>  Just last week the Supreme Court reiterated the high standard for pleading scienter under Section 10(b) and the PSLRA. In *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, __ U.S. ___, 2007 WL 1773208 (June 21, 2007), the Court held a plaintiff does not adequately plead scienter by alleging facts from

3

which a reasonable person could infer an intent to defraud. Rather, a court faced with a motion to dismiss must consider all plausible inferences from the alleged facts and may permit the case to proceed only if the plaintiff's proposed inference of scienter is "cogent and at least as compelling as any opposing inference of nonfraudulent intent." *Id*. at *10.[1] Here, Plaintiffs' proposed inference of scienter, which would require the Defendants to have foreseen the extraordinary events that led to the City of West Palm Beach's alleged decision to terminate the Professional Services Agreement, is exceedingly weak.[2] Indeed, the only argument Plaintiffs offer to support an inference of scienter is the fact of the "Liberti Relationship" and Defendants' failure to disclose it.[3] *See* Pls.' Mem. at 27-29. Plaintiffs ignore that Defendants:

- had a significant ownership interest in the very entity (RPLP) they allegedly cheated, Am. Compl. ¶ 21;

- were introduced to Liberti by reputable Florida counsel, *id.* ¶¶ 28-29;

- had written agreements with Liberti that excluded consulting on projects within the City of West Palm Beach, *id.*, Ex. B;

---

[1] Plaintiffs filed a Notice of Supplemental Authority regarding the *Tellabs* decision. Despite Plaintiffs' attempt to spin *Tellabs* in their favor, the Court's holding hardly supports Plaintiffs' case. *See Tellabs*, 2007 WL 1773208 at *10. Indeed, commentators throughout the world regard the *Tellabs* decision as a major setback for securities plaintiffs. *See, e.g.*, David W. Wiltenburg, *'Tellabs' Decision: Strong, Stonger Inferences of Scienter*, N.Y. Law Journal, June 27, 2007, at 4; Stephen Labaton, *A U.S. Court Setback for Investor Lawsuits*, Int'l Herald Tribune, June 23, 2007, at 20; James P. Miller, *Investors Have More To Prove in Fraud Suits*, Chicago Tribune, June 22, 2007, at 1; Patti Waldmeir, *Supreme Court Tightens Rules for Lawsuits by Investors*, Financial Times UK, June 22, 2007, at 8.

[2] Under *Tellabs*, it is no longer the rule in a Section 10(b) case that "[t]he complaint must be construed in the light most favorable to the plaintiff," as Plaintiffs here assert (Pls.' Mem. at 10-11). Rather, if a complaint gives rise to more cogent inferences of non-fraudulent intent, the court is not free to ignore them.

[3] To the extent that Plaintiffs rely on allegations of motive and opportunity, it is now clear that such allegations standing alone cannot defeat a motion to dismiss. The Court must undertake a "comparative evaluation," in which any inference that could be drawn from motive and opportunity must be weighed against opposing inferences of non-fraudulent intent.

- paid Liberti by check, *id.* Ex. B, E; and
- had no knowledge of Liberti's unrelated criminal conduct.

Accordingly, the inference that Defendants had no fraudulent intent is far more compelling than the opposing inference that Defendants intended to deceive the Plaintiffs by not disclosing the consulting arrangement with Liberti. Under *Tellabs*, Plaintiffs' claim for securities fraud fails.[4]

3. <u>Plaintiffs' claim that RPC made material misrepresentations is without merit.</u> As an initial matter, Plaintiffs cannot save their misrepresentation claim by alleging "the entire Development Contribution Agreement was misleading in light of the circumstances in which it was made." Pls.' Mem. at 23-24. Plaintiffs are well aware a claim for fraudulent misrepresentation requires identification of specific material statements alleged to be misleading. *See I. Meyer Pincus & Assoc., P.C. v. Oppenheimer & Co., Inc.*, 936 F.2d 759, 761 (2d Cir. 1991) (Section 10(b) requires "that plaintiff identify a materially misleading statement made by the defendants"); *Suez Equity Investors, L.P. v. Toronto-Dominion Bank*, 250 F.3d 87, 95 (2d Cir. 2001) (Rule 9(b) "imposes an obligation on plaintiff to specify the statements it claims were false or misleading, give particulars as to the respect in which plaintiff contends the statements were fraudulent, state when and where the statements were made, and identify those responsible for the statements") (quotation omitted).

As for the specific representations Plaintiffs identify in the Development Contribution Agreement, they claim it is for the jury to decide whether the Liberti relationship

---

[4] Plaintiffs' contention that they need not show scienter on the part of any individual in order to show scienter as to RPC is against the weight of the most persuasive authority. In *Southland Sec. Corp. v. Inspire Ins. Solutions, Inc.*, 365 F.3d 353 (5th Cir. 2004), the Fifth Circuit surveyed the relevant case law and concluded that "it [is] appropriate to look to the state of mind of the individual corporate official or officials who make or issue the statement . . . rather than generally to the collective knowledge of all of the corporation's officers and employees acquired in the course of their employment." *Id.* at 366.

rendered these statements misleading. Before Plaintiffs' misrepresentation claim can be heard by a jury, however, it must be properly pleaded. First, Plaintiffs claim RPC's representation that the Development Contribution Agreement was a "legal, valid and binding obligation of RPC" was misleading because of the "Liberti Relationship." But they do not explain how this representation – which concerns the enforceability of the Development Contribution Agreement against RPC – is rendered misleading because of a consulting arrangement between RPC and Liberti regarding matters outside the City of West Palm Beach. Second, Plaintiffs allege the representation that the Professional Services Agreement was "in full force and effect and to the knowledge of RPC, neither it nor CRA is in default thereunder" was misleading because RPC made false representations to the CRA under the Professional Services Agreement. As discussed in RPC and Kramer's motion, Plaintiffs have not pled facts showing that RPC breached any representation under the Professional Services Agreement. *See* RPC/Kramer Mem. at 10-11. In particular, Plaintiffs make no allegation that RPC failed to perform or was "in default" under the Professional Services Agreement. For these reasons as well, Plaintiffs claim for breach of contract, which is based solely on RPC's supposed breach of representations contained in the Development Contribution Agreement, also fails.

4.      <u>Plaintiffs misconstrue RPC and Kramer's argument concerning the effect of the Development Contribution Agreement's integration clause.</u> Contrary to Plaintiffs' suggestion, RPC and Kramer do not argue the existence of the integration clause bars fraud claims in all circumstances. *Cf. Whelan v. Abell*, 48 F.3d 1247, 1258 (D.C. Cir. 1995). Rather, this case involves a sophisticated party who asked for and received specific representations that it considered material to the formation of the Development Contribution Agreement. "When parties are negotiating at arm's length, each side presumably can condition their contractual

6

agreement on the inclusion of representations that each side deems material." *In re U.S. Office Prods. Co. Sec. Litig.*, 251 F. Supp. 2d 77, 102 (D.D.C. 2003). The representations and warranties contained in the Development Contribution Agreement demonstrate that RPT was able to request information and assurances it considered material to the formation of the agreement, including on the topic of the Professional Services Agreement. Notably, RPT does not allege it asked about RPC's consulting arrangements. Nor does RPT allege it did not understand the meaning and effect of the integration clause, which explicitly provides that the Development Contribution Agreement, and representations and warranties contained therein, constitutes "the entire agreement" between the parties. *See id*. The consulting arrangement Plaintiffs now claim – in hindsight – to be material is outside of the scope of those representations and cannot form the basis of a fraud claim in light of the agreement's integration clause. *See id.* at 101-02; *see also Rissman v. Rissman*, 213 F.3d 381 (7th Cir. 2000) (dismissing fraud claim where the plaintiff made specific requests for contract terms, received responses to them, and the final contract contained an integration clause).

        5.    <u>Plaintiffs fail to show that as general partner of RPLP, RPT was a seller of securities under Section 10(b).</u> To have standing under Section 10(b), a plaintiff must be an actual purchaser or seller of securities. *See Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 729 (1974). The Amended Complaint alleges that RPLP's issuance of partnership units constituted the sale of securities. *See* Am. Compl. ¶ 104. As for RPT, Plaintiffs claim that RPT, as general partner, "caused" RPLP to issue those units, *see* Am. Compl. ¶¶ 107, 110, and thus RPT is also a "seller" of securities under Section 10(b).[5] Plaintiffs' argument is without merit.

---

[5]     Plaintiffs cite to the Limited Partnership Acceptance in their Opposition, but that agreement is a mere formality pursuant to which RPT, acting as the general partner of RPLP,

First, contrary to Plaintiffs' suggestion, *Allard v. Arthur Anderson & Co.*, 924 F. Supp. 488, 496 (S.D.N.Y. 1996), does not hold that where a limited partnership sells securities, the general partner of the limited partnership is also deemed a "seller" under the federal securities laws. To the contrary, *Allard* merely cites *Capri v. Murphy*, 856 F.2d 473, 478 (2d Cir. 1988), for the proposition that general partners of a limited partnership "<u>could be</u> deemed the 'sellers' of the limited partnership interests" under the Securities Act of 1933. *Allard*, 924 F. Supp. at 496 (emphasis added). *Capri*, in turn, held that general partners of a limited liability partnership were "sellers" under the Securities Act where the lower court "specifically found" that all promotional efforts related to the sale of the limited partnership units were "directly attributable" to actions by the general partners. 856 F.2d at 478. Plaintiffs make no such allegations concerning RPT here.

Second, Plaintiffs improperly disregard the legal form of the limited partnership. Under Delaware law, RPLP "is a separate legal entity which is an entity distinct from its partners unless otherwise provided[.]" 6 Del. C. § 15-201(a). RPT's legal relationship to RPLP – the actual seller – is insufficient to confer standing under Section 10(b). *Benson v. RMJ Sec. Corp.*, 683 F. Supp. 359, 367-68 (S.D.N.Y. 1988) ("a person who himself neither bought nor sold securities [cannot] be characterized as a … seller merely because of his relationship to the *actual* … seller" (quotation omitted)); *Bolger v. Laventhol, Krekstein, Horwath, & Horwath*, 381 F. Supp. 260, 267 (S.D.N.Y. 1974).

6.      <u>Plaintiffs misstate the D.C. Securities Code.</u> Plaintiffs assert that the District of Columbia securities law provides a private right of action for any violation of Section 31-5605.2(a)(1). Pls.' Mem. at 35-36. Plaintiffs, however, are mistaken. Plaintiffs purport to

---

admitted RPC as a limited partner of RPLP, and RPC agreed to abide by the terms of the partnership agreement.

rely on Section 31-6506.05(a)(3)(B)(ii), but there is no such section. Presumably Plaintiffs intended to cite Section 31-5606.05(a)(3)(B)(ii). That section exists, but it does not do what Plaintiffs claim. Section 31-5606.05(a)(3)(B)(ii) is joined to Section 31-5606.05(a)(3)(B)(i) by the word "and." Thus, under Section 31-5606.05(a)(3), a person "shall be civilly liable" only if both subsections (B)(i) and (B)(ii) are satisfied. In full, the relevant statutory language is:

> A person shall be civilly liable to another person if the person: . . .
>
> (B)(i) [r]eceives directly or indirectly any consideration from the other person for advice as to the value of securities or their purchase or sale or for acting as an investment adviser or representative under § 31-5601.01(17) or (18), whether through the issuance of analyses, reports or otherwise, <u>and</u>
>
> (ii) [e]mploys an [sic] device, scheme, or artifice to defraud the other person or engages in an act, practice, or course of business which operates as a fraud or deceit on the other person.

D.C. Code § 5606.05(a)(3)(B) (emphasis added). Plaintiffs do not and cannot allege that Kramer or RPC were paid to offer them investment advice, as required by Section 31-5606.05(a)(3)(B)(i). Accordingly, their claim under the District of Columbia securities code must be dismissed as to Kramer.[6]

       7.    <u>Plaintiffs fail to plead unjust enrichment against Richard L. Kramer.</u>
Plaintiffs' claim for unjust enrichment also asks the Court to disregard legal forms. Plaintiffs assert they conferred a benefit on Kramer because the RPLP partnership units RPC received under the Development Contribution Agreement are held by RPC "for the benefit of" Kramer.[7]

---

[6]    Plaintiffs' half-hearted suggestion (Opp. at 36) that Kramer is potentially liable under a separate section – Section 31-5606.05(a)(2)—which creates a cause of action only as to purchasers of securities invites the Court to ignore the distinction between Kramer and RPC. Plaintiffs, however, have pled no basis for ignoring the corporate form.

[7]    In support of this claim, Plaintiffs cite RPT's prospectus, which discloses merely that Kramer <u>and affiliates of Kramer</u> (such as RPC) will receive partnership units in RPLP in exchange for contributing certain assets. *See* RPT Prospectus at 12 n. 1 (noting that Kramer

9

RPC, however, is a corporation and Kramer is simply one of its shareholders. *See* Am. Compl. ¶ 3, 5. Certainly, Plaintiffs have pled no facts demonstrating whether and how Kramer was <u>directly</u> enriched by RPC's acquisition of RPLP's partnership units. *See News World Communications, Inc. v. Thompsen*, 878 A.2d 1218, 1222 (D.C. 2005) (to state a claim for unjust enrichment, plaintiff must show that he conferred a benefit on the defendant). Accordingly, Plaintiffs' claim for unjust enrichment should be dismissed.

## CONCLUSION

For the foregoing reasons, and for the reasons stated in RPC and Kramer's Memorandum in Support of their Motion to Dismiss, the Amended Complaint should be dismissed for failure to state a claim.

                                                Respectfully submitted,

                                                _____/s/ Paul Martin Wolff_____
                                                Paul Martin Wolff (Bar No. 90217)
                                                F. Whitten Peters (Bar No. 255083)
                                                George A. Borden (Bar No. 419772)
                                                William T. Burke (Bar No. 471948)
                                                Williams & Connolly LLP
                                                725 12th Street, N.W.
                                                Washington, D.C. 20005
                                                Telephone: (202) 434-5000
                                                Facsimile: (202) 434-5029

Dated: June 27, 2007

---

"includes affiliates of named person, including Republic Properties Corporation, a District of Columbia corporation owned by Messrs. Kramer and Grigg").

**CERTIFICATE OF SERVICE**

      I hereby certify that on this 27th day of June, 2007, I caused true and correct copies of the Reply of Richard L. Kramer and Republic Properties Corporation in Support of their Motion to Dismiss the Amended Complaint to be served electronically via the Court's ECF system on:

Mark E. Nagle
Tracy P. Varghese
TROUTMAN SANDERS LLP
401 9th Street, N.W., Suite 1000
Washington, D.C. 20004
mark.nagle@troutmansanders.com

*Attorneys for Plaintiffs*

                                                    /s/
                                      William T. Burke